Smith, J.
The question in this case is, whether it is shown by the evidence that there was either an apparent or actual authority on the part of Loud, acting as the agent of Frank and wife, to deliver to Mrs. Levy, or her agent, the deed executed by Frank and wife to her of the real estate in controversy, and to receive from Mrs. Levy, or her agent, the amount of the purchase money coming to the Franks.
The facts in the case were substantially these: Loud was acting, in the first instance, as a real estate agent and broker, on behalf of Frank and wife, to sell this property. They had known him for years, and he had transacted similar business for them. They evidently trusted him, and, as the evidence shows, did not contemplate that his connection with the matter should cease, when he had brought about a sale of the property to Mrs. Levy for $5,750. After this he was active in assisting Mr. Strieker, who was acting for Mrs. Levy and the building association (which was proposing to loan to Mrs. Levy, on a mortgage on the property, the sum of $4,000, in part payment of the purchase price), to clear up some defects in the title. When this was done, he presented to Mr. Strieker an unsigned deed, to see if the form was satisfactory to him, and took it to have it executed. When he went to Frank’s home for this purpose, with the officer to take the acknowledgment, Mrs. Frank, to whom the conduct of the business had been intrusted, Frank himself (being an invalid), was absent from home; but the deed was then acknowledged by him and given to the notary to take to the place where Mrs. Frank was, to get her acknowledgment thereto. At this time, however, Mr. Frank executed . an assignment of an insurance policy which he had on the property, and which was to be transferred to the purchasers, and Loud took it to be delivered to them. In the afternoon, Loud and the notary found Mrs. Frank, and she executed the deed, and it was then taken by Loud, who told her that *556 he would see her the following day, and she made no objection to his taking the deed. What else, if then or at other times, was said between her and Loud is not testified to by any witness. They had some conversation together, after the execution of the deed, out of the hearing of the notary.
It had been arranged between Loud, who claimed to represent the Franks, and Mr. Strieker, who was acting for Mrs. Levy and for the building association, that a meeting was to be held at Strieker's office at 10 o’clock of the morning of January 28, 1890, to close up this transaction. Mr. and Mrs. Levy and the officer of the association were there, but neither of the Franks or Loud appeared. Loud telephoned that on account of the trouble in getting the deed acknowledged he could not be there until after noon. It was then arranged by those present that the business should be closed up by Mr. Strieker; that the executed mortgage of the.Levys to the association and the checks of the association to Mrs. Levy for the $4,000 should be left with him to do so, and on the deed being delivered he was to receive it and pay the money. The checks were indorsed by Mrs. Levy, and the residue of the purchase money handed to him. All this money and the checks were deposited by Strieker to his own credit in bank. In the afternoon Loud came with the Frank deed, and delivered it to Strieker, who paid him the purchase money due to the Franks by his check, payable to the order of Loud, as agent of Frank. Loud drew this money, embezzled it, and fled. The deed and mortgage were filed for record the same day by Strieker, acting for the respective grantees.
It must be conceded that so far there is no evidence of any express authority given by the Franks, or either of them, to Loud to deliver the deed so intrusted to him by them to Mrs. Levy, or to receive the purchase money for them. No witness has testified that he heard any such authority given. But we think the proof mentioned goes very far to show an *557 apparent authority to do this, and to justify Mr. Strieker in receiving the deed and paying the money as he did.
Porter & Pendigs and J. D. Cread, for plaintiff.
Paxton & Warrington and Wm. Strieker, for defendant.
But, if there was doubt on this point, there is evidence which satisfies us that such authority had, in fact, been given to Loud by Mrs. Frank. We have the evidence of several witnesses, entirely disinterested, and on which we rely, that shortly after Loud had disappeared, and before she knew of the fact, that Mrs. Frank, on at least two occasions, stated and admitted that she had authorized Loud to do this and bring the money to her,’ she being too busy to attend to it. These admissions, taken in connection with the other evidence in the case, convince us. that such authority was, in fact, conferred upon him, as much so as if we had the-statements of witnesses who heard it given.
This being so, we think the claim of counsel for the plaintiff, that the relief sought by Frank should be granted for the reason that Mrs. Levy paid Loud fifty dollars for his services about the matter for her, made him her agent instead of the agent of the Franks, is not well founded. It may be that she should not have done this; but it appears that was agreed between Mrs. Frank and Loud that if he could, he might get a part or the whole of his commissions from Mrs. Levy. Undoubtedly he was the agent of the Franks; and though the result of our decision is, that the loss will fall upon them, and they suffer a great loss, it must be remembered that a contrary decision would result in an equal loss to the Levys, whom we find have not been in the wrong. And as the authority to do this was conferred by the plaintiffs upon Loud, and the loss has been incurred through him, they must bear it. The petition will therefore be dismissed.
Affirmed by the Supreme Court without report. Oct. 1, 1895.